[No. S147510. July 10, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SAUL GARCIA CUEVAS, Defendant and Appellant.

**COUNSEL**

Roberta Simon, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell, Lawrence M. Daniels, Kristofer Jorstad, Lance E. Winters and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—Negotiated plea agreements may include a sentence "lid," which constrains the maximum sentence a trial court may impose but is less than the maximum exposure the defendant would otherwise face absent the agreed-upon lid. In *People v. Shelton* (2006) 37 Cal.4th 759, 763 [37 Cal.Rptr.3d 354, 125 P.3d 290] (*Shelton*), we held that when a plea agreement specifies a sentence lid, "a challenge to the trial court's authority to impose the lid sentence is a challenge to the validity of the plea requiring a certificate of probable cause." Absent such certificate, a defendant may not later complain that the imposed sentence lid violated Penal Code[1] section 654's proscription against multiple punishment, which in substance is a challenge to the plea's validity. (*Shelton, supra,* 37 Cal.4th at p. 769.)

In this case, defendant and the prosecution negotiated a plea by which certain charges would be dismissed or reduced, and defendant agreed that the

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

maximum possible sentence for the remaining charges would be 37 years eight months. After the trial court sentenced him to a term within that maximum, defendant attempted to raise a section 654 challenge to the sentence in the Court of Appeal. Arguably, the negotiated sentence here was not technically a sentence lid. In *Shelton*, we described a sentence lid as ordinarily less than the maximum possible sentence the trial court may lawfully impose for the offenses admitted by the defendant's guilty or no contest plea. (*Shelton, supra,* 37 Cal.4th at pp. 767, 768.) "If the maximum sentence authorized by law were at or below the specified sentence lid, the lid provision would be superfluous and of no benefit to the defendant." (*Id.* at p. 768.)

Instead, the stated sentence here was what the parties agreed was the maximum for the charges to which defendant pleaded no contest. It was, however, significantly less than the sentence he faced under the original charges, which included two life sentences. The issue here is whether *Shelton* governs this case despite this factual difference. We conclude that *Shelton* and related cases apply here, and compel the conclusion that a certificate of probable cause is required.

We reverse the judgment of the Court of Appeal, which reached a contrary conclusion.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Saul Garcia Cuevas was charged with 27 counts of robbery, one count of grand theft, one count of attempted robbery, and two counts of kidnapping for robbery. (§§ 211, 487, subd. (c), 664, 209, subd. (b)(1).) The information also alleged that he used a firearm in the commission of each of these 31 offenses. (§ 12022.53, subd. (b).)

Between December 2001 and March 2002, defendant, armed with a BB gun, entered approximately 18 businesses and demanded money and/or personal property from the employees. As relevant here, on eight occasions, defendant took or attempted to take both personal property from the employees and money from the store's safe or cash register. He was charged with two counts of robbery (or in one instance, robbery and attempted robbery) for each of these incidents, one count for taking money from the employee out of the cash register and the other for taking personal property from the same employee.

In exchange for defendant's plea of no contest, the prosecution agreed to reduce the two aggravated kidnapping counts (§ 209, subd. (b)(1)) to simple kidnapping (§ 207), and to drop the 31 charged allegations under section 12022.53,

subdivision (b), and instead add one section 12022, subdivision (b)(1) allegation. Based on the terms of the plea agreement (as discussed in greater detail below), defendant agreed to a maximum possible sentence of 37 years eight months. After the prosecution advised him of the consequences of his plea, defendant pled no contest to 27 counts of second degree robbery, two counts of simple kidnapping, one count of attempted robbery, and one count of grand theft. He admitted one allegation that he used a weapon during commission of these offenses (§ 12022, subd. (b)(1)).

The trial court sentenced defendant to 35 years eight months, calculated as follows: the upper term of eight years on one kidnapping count; 27 consecutive one-year terms for each robbery count; and a consecutive term of eight months for grand theft. The court imposed concurrent terms for the attempted robbery count and second kidnapping count, and struck any remaining allegations under section 1385. Defendant filed a notice of appeal and requested a certificate of probable cause, seeking reversal of his convictions on grounds that his defense attorney was ineffective in developing a defense to the charges and in providing advice about the consequences of his plea. The trial court denied the certificate.

After examining the record under *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], the Court of Appeal requested supplemental briefing on the effect of both *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] *(Blakely)*, and section 654 on defendant's sentence. While agreeing with the Attorney General that defendant's "failure to obtain a certificate of probable cause precludes this court from addressing the *validity* of his plea to these counts" (see *People v. Panizzon* (1996) 13 Cal.4th 68, 76 [51 Cal.Rptr.2d 851, 913 P.2d 1061] *(Panizzon)*), the Court of Appeal concluded that defendant was not procedurally barred from challenging the duplicative robbery and attempted robbery counts under section 654. It did not reach defendant's *Blakely* claim. We granted and held this case for *Shelton*, which had not yet been decided, and later transferred the case back for reconsideration after our decision in *Shelton* had become final.

On reconsideration, the Court of Appeal identified the issue as "whether the rule articulated in *Shelton* applies when the plea agreement does not specify a lid, but the court, in taking the plea, advises the defendant of the maximum sentence available for the charges and proceeds to impose a sentence within that theoretical maximum." In such a case, the Court of Appeal held, the defendant and the prosecution have not agreed to any specified maximum sentence, and any challenge to the sentence does not affect the validity of the plea, which would otherwise require a certificate of probable cause under *Shelton, supra,* 37 Cal.4th 759.

Addressing the merits of defendant's claims, the Court of Appeal held that he was improperly sentenced for 15 counts of robbery and one count of attempted robbery, because on these counts defendant "was sentenced twice for robbing a single store employee victim of personal property and the store's money during the course of a single robbery. Section 654 precludes multiple punishment for a single act or indivisible course of conduct." The Court of Appeal remanded the case for resentencing, directing the trial court to stay the sentences on the eight duplicative counts. Pursuant to *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534], the Court of Appeal rejected defendant's claims that the imposition of the upper term and consecutive sentences violated *Blakely.*

We granted the Attorney General's petition for review.[2]

DISCUSSION

■ A defendant may not appeal "from a judgment of conviction upon a plea of guilty or nolo contendere," unless he has obtained a certificate of probable cause. (§ 1237.5, subd. (b); see *People v. Buttram* (2003) 30 Cal.4th 773, 790 [134 Cal.Rptr.2d 571, 69 P.3d 420] (*Buttram*) [§ 1237.5's purpose is "to weed out frivolous and vexatious appeals from pleas of guilty or no contest, before clerical and judicial resources are wasted"].) Exempt from this certificate requirement are postplea claims, including sentencing issues, that do not challenge the validity of the plea. (Cal. Rules of Court, rule 8.304(b)(4)(B); *Shelton, supra*, 37 Cal.4th at p. 766; *Buttram, supra*, 30 Cal.4th at p. 776; *Panizzon, supra*, 13 Cal.4th at pp. 74–75.) For example, "when the claim on appeal is merely that the trial court abused the discretion the parties intended it to exercise, there is, in substance, no attack on a sentence that was 'part of [the] plea bargain.' [Citation.] Instead, the appellate challenge is one contemplated, and reserved, by the agreement itself." (*Buttram, supra*, 30 Cal.4th at p. 786.)

In *Shelton, supra*, 37 Cal.4th 759, we addressed the related issue whether a defendant may challenge the trial court's *authority* to impose a sentence lid

---

[2] We denied without prejudice defendant's petition seeking relief under *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856], which had not yet been decided, *Blakely, supra*, 542 U.S. 296, and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738]. In any event, the *Cunningham* issue is distinguishable from the section 654 issue presented in this case. (See *People v. French* (2008) 43 Cal.4th 36 [73 Cal.Rptr.3d 605, 178 P.3d 1100].) As we recently made clear, a defendant's claim that the imposition of an upper term violates the Sixth Amendment right to a jury trial as established in *Cunningham, supra*, 549 U.S. 270, implicates his sentence only and does not challenge the validity of the plea agreement. (*People v. French, supra*, 43 Cal.4th at pp. 41, 45 ["In contrast to a case in which the maximum term under the plea agreement would be unlawful under section 654, the Sixth Amendment would not render an upper term unlawful for defendant's crimes under all circumstances."].)

on the ground that the sentence violated the multiple punishment prohibition of section 654.[3] In exchange for the dismissal of other charges and a sentence lid of three years eight months, defendant Shelton pled no contest to one count of stalking in violation of a protective order and one count of making a criminal threat. The trial court explained the plea agreement's sentencing provision as follows: " 'And the lid is three years eight months. Which means that the agreement is that I cannot sentence you to more than three years and eight months and you can argue for something less than three years and eight months.' " (*Shelton, supra,* 37 Cal.4th at p. 764.) Rejecting Shelton's claim that section 654 required it to stay any sentence for the criminal threat conviction, the trial court sentenced him to consecutive terms totaling the lid of three years eight months. The Court of Appeal majority held that by entering into a plea agreement with a sentence lid, Shelton did not waive the right to challenge the sentence based on section 654 because the agreement expressly permitted him to "argue for" a sentence less than the maximum term. (*Shelton, supra,* 37 Cal.4th at pp. 764–765.) We reversed the Court of Appeal's judgment. (*Id.* at p. 771.)

■ Distinguishing *Buttram, supra,* 30 Cal.4th 773, we held that notwithstanding the provision recognizing Shelton's right to argue for a lesser term, the "inclusion of a sentence lid implies a mutual understanding and agreement that the trial court has authority to impose the specified maximum sentence and preserves only the defendant's right to urge that the trial court should or must exercise its discretion in favor of a shorter term." (*Shelton, supra,* 37 Cal.4th at p. 763; see *id.* at p. 768.) In Shelton's case, "Because the plea agreement was based on a mutual understanding (as determined according to principles of contract interpretation) that the court had authority to impose the lid sentence, defendant's contention that the lid sentence violated the multiple punishment prohibition of Penal Code section 654 was in substance a challenge to the plea's validity and thus required a certificate of probable cause, which defendant failed to secure." (*Id.* at p. 769.)

In this case, the Court of Appeal determined that because the parties had not agreed on a sentence lid, *Shelton* did not apply to foreclose defendant's challenge to his sentence. It found instead that the trial court merely advised defendant of the maximum sentence that could be imposed based on the charges to which he pled. This, the Court of Appeal held, was not enough to

---

[3] "It is well settled . . . that the court acts 'in excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654." (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

trigger *Shelton*: "A defendant who merely acknowledges the theoretical maximum sentence based on an open plea stands in different shoes than a defendant who has entered an agreement that calls for a lid on the sentence. . . . A defendant who enters an open plea and is advised of his maximum exposure has received no promise with respect to his sentence—he is simply being provided with the information necessary to enter a voluntary and intelligent plea."[4] Advancing the Court of Appeal's reasoning, defendant here contends that absent a negotiated sentence lid (and thus, he asserts, absent the parties' mutual understanding and agreement that the trial court had authority to impose the ultimate sentence), defendant's intent to waive a section 654 challenge cannot be implied. He argues, in other words, that "there is no lid from which to imply that a section 654 challenge was waived."

■ Contrary to defendant's contention, the presence or absence of a sentence lid does not dictate the result here. For purposes of the certificate of probable cause requirement, the critical question is whether defendant's section 654 challenge to his sentence is in substance a challenge to the validity of his plea. (*Shelton, supra*, 37 Cal.4th at pp. 766–767; see *Buttram, supra*, 30 Cal.4th at p. 782; *Panizzon, supra*, 13 Cal.4th at p. 76.) In other words, the question is whether defendant "seeks only to raise [an] issue[] reserved by the plea agreement, and as to which he did not expressly waive the right to appeal." (*Buttram, supra*, 30 Cal.4th at p. 787; see *Shelton, supra*, 37 Cal.4th at p. 769; *Panizzon, supra*, 13 Cal.4th at p. 78, fn. 8.) We conclude that defendant's plea agreement did not reserve such a postplea challenge because the maximum possible sentence defendant faced was "part and parcel of the plea agreement he negotiated with the People." (*Panizzon, supra*, 13 Cal.4th at p. 78.)

In *Panizzon*, our seminal decision clarifying the scope of section 1237.5, we held that a certificate of probable cause was required where the defendant claimed on appeal that his negotiated sentence constituted cruel and unusual

---

[4] Contrary to the Court of Appeal's and the parties' characterization, defendant's plea was not truly "open." (See *People v. Cole* (2001) 88 Cal.App.4th 850, 857–858 [106 Cal.Rptr.2d 174] [despite prosecutor's and written waiver's reference to defendant's "open" plea, plea was actually "negotiated disposition"].) An open plea is one under which the defendant is not offered any promises. (*People v. Williams* (1998) 17 Cal.4th 148, 156 [69 Cal.Rptr.2d 917, 948 P.2d 429].) In other words, the defendant "plead[s] unconditionally, admitting all charges and exposing himself to the maximum possible sentence if the court later chose to impose it." (*Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1055–1056 [122 Cal.Rptr.2d 844].) Under the plea agreement, defendant here received a significant reduction in sentence in exchange for his plea. (See *post*, at p. 383.)

punishment. (*Panizzon, supra,* 13 Cal.4th at p. 78.) Although defendant Panizzon did not purport to challenge the validity of his no contest plea, we concluded that the sentence to which he agreed was "an integral part of the plea agreement," and that "by contesting the constitutionality of the very sentence he negotiated as part of the plea bargain, defendant is, in substance, attacking the validity of the plea." (*Panizzon, supra,* 13 Cal.4th at p. 78; see *Buttram, supra,* 30 Cal.4th at p. 776.)

Like Panizzon, defendant here is challenging the very sentence he negotiated as part of the plea bargain, and, in substance, is attacking the validity of his plea. The record here clearly reflects that defendant agreed to a maximum possible sentence of 37 years eight months, and belies the assertion that he was merely *advised* of the maximum sentence.

For instance, when first discussing the terms of the plea agreement on the record, the parties specified the maximum sentence defendant faced:

"The Court: All right. And it was indicated off the record what the theoretical max is on this case, and I believe it was indicated to be thirty-six years and eight months.

"[Prosecutor]: Actually with the one-year enhancements *it would be thirty-seven years and eight months,* and I understand this is going to be an open plea wherein the defense would present at a sentencing hearing factors in mitigation and the court would, after hearing both sides, sentence the defendant to what the court felt was the appropriate sentence.

"[Defense counsel]: *That's our understanding.*

"The Court: *But no more than the max obviously.*

"[Defense counsel]: Hopefully." (Italics added.)

In another exchange, defendant was advised of and waived certain constitutional rights based on his plea, and confirmed he was freely and voluntarily pleading because he felt it was in his best interest to do so. In advising him of the consequences of his plea, the prosecution reiterated the maximum sentence defendant faced under terms of the plea agreement:

"All right. Now, there are certain consequences that you need to be aware of before you enter your plea in this case. The maximum time as you've heard, as it's charged in the information and had we gone to trial, would have

been two life sentences plus thirty-six years or more, thirty-seven years. You are—our understanding with you is that that is not going to be your maximum, *your maximum is going to be a determinant sentence of thirty-seven years*, and you're pleading open to the information under those circumstances and the judge is going to listen to a sentencing—in a sentencing hearing to what your attorney has to present and then he will make the final decision as to exactly how much time you're going to receive. Do you understand that?

"[The defendant:] Yes, ma'am." (Italics added.)

In addition, defense counsel informed the court that he had "indicated to [defendant] that the terms of this disposition are that the plea is open, that he faces a maximum of thirty-seven years, eight months." The trial court shared that understanding; before sentencing defendant, it informed the parties: "I'm working off 37, 8 because that was indicated at the time of the plea. . . . [I]n fairness to everybody we should go with what the deal was, and the max then was 37 years, 8 months, according to page 9 of [the] transcript."

■ " 'When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.' " (*Panizzon, supra,* 13 Cal.4th at p. 80; see *People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569] ["defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process"].) "Defendant's attack on the legality of his maximum sentence is an effort to unilaterally improve, and thus alter, the terms of that which was agreed and thus should not be permitted without a certificate of probable cause." (*People v. Young* (2000) 77 Cal.App.4th 827, 833 [91 Cal.Rptr.2d 916] [following *Panizzon* and affirmed in *Shelton*].)

In this case, defendant received a significant reduction in sentence, or in the prosecution's words, two "very large breaks," in exchange for his plea. Under the plea agreement, the prosecution agreed to reduce the two kidnapping for robbery counts (§ 209, subd. (b)(1))—each carrying a life sentence—to simple kidnapping (§ 207), and to dismiss the 31 firearm allegations (§ 12022.53, subd. (b)), and instead add a single weapon use allegation (§ 12022, subd. (b)(1)). The prosecution informed defendant that had they gone to trial on all the charged offenses, he would have faced two life sentences plus 37 years. By negotiating the reduction and dismissal of these charges, defendant necessarily understood and agreed that he faced a

significantly reduced sentence of 37 years eight months. This maximum sentence was "part and parcel" of the plea bargain the parties negotiated. (*Panizzon, supra,* 13 Cal.4th at p. 78; see *Young, supra,* 77 Cal.App.4th at p. 832 ["by attacking the maximum term, defendant seeks to void a term of the agreement to which both parties agreed to abide . . ."].) Thus, by challenging the negotiated maximum sentence imposed as part of the plea bargain, defendant is challenging the validity of his plea itself. (*Panizzon, supra,* 13 Cal.4th at p. 79; *People v. Young, supra,* 77 Cal.App.4th at p. 832.)[5]

Contrary to defendant's argument, *Shelton* does not dictate a different result. In *Shelton,* our interpretation of the negotiated plea agreement, though focused on the sentence lid, emphasized giving effect to the parties' mutual intention. (*Shelton, supra,* 37 Cal.4th at p. 767.) In that case, the plea agreement's provision permitting Shelton to "argue for" a lesser term created an ambiguity as to whether he was allowed to raise an appellate claim *on any ground.* (*Id.* at pp. 767–768; see *id.* at p. 771 (dis. opn. of Werdegar, J.).) Therefore, in order to resolve the ambiguity, we were required to analyze " 'objective manifestations of the parties' intent,' " including the surrounding circumstances under which the parties negotiated the agreement. (*Id.* at p. 767.) We concluded that under the "totality of the circumstances," Shelton "did not reserve a right to argue that the trial court lacked authority to impose the specified maximum sentence." (*Id.* at p. 769.)

In contrast to *Shelton, supra,* 37 Cal.4th 759, there was no such ambiguous provision here. Defendant received what he negotiated and agreed to under the plea agreement, and he must abide by the terms of the agreement. (*Panizzon, supra,* 13 Cal.4th at p. 80.) In asserting that section 654 requires the trial court to stay any duplicative counts, defendant is not challenging the court's exercise of sentencing discretion, but attacking its *authority* to impose consecutive terms for these counts. This amounts to a challenge to the plea's validity, requiring a certificate of probable cause, which defendant failed to secure. (*Shelton, supra,* 37 Cal.4th at p. 770; *Panizzon, supra,* 13 Cal.4th at p. 79.) Therefore, his appeal based on section 654 is barred.[6]

---

[5] We reject defendant's separation of powers claim, which is based on his erroneous assertion that the court "actively" imposed a term on the parties' plea agreement. Moreover, contrary to defendant's suggestion, *People v. Walker* (1991) 54 Cal.3d 1013 [1 Cal.Rptr.2d 902, 819 P.2d 861], lends no support because in defendant's case, there was no breach of the plea bargain. (See *Walker, supra,* 54 Cal.3d at pp. 1029–1030 [remedy for breach of plea bargain is to reduce fine to statutory minimum].)

[6] Given this conclusion, we need not, and do not, reach the issue whether defendant's challenge under section 654 is barred by rule 4.412(b) of the California Rules of Court. (See *Shelton, supra,* 37 Cal.4th at p. 771.)

## CONCLUSION

Based on the foregoing, we reverse the Court of Appeal's judgment and remand the matter for proceedings consistent with our opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

Appellant's petition for a rehearing was denied August 13, 2008.